UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CHARLES F. VADEN,                       )
                        Plaintiff,      )
                                        )
            vs.                         )        1:12-CV-284-SEB-DKL
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of the Social Security     )
Administration,                         )
                                        )
                        Defendant.      )
                                        )

**ENTRY**

This is an appeal from a final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying Charles F. Vaden ("Claimant" or "Mr. Vaden")

benefits for Social Security Disability Insurance and for Social Security Supplemental

Security Income based on a disability onset date of February 19, 2009.   Mr. Vaden asserts

that the decision denying him such benefits was made in error and requests that the Court

remand the case to the Commissioner.   For the reasons detailed herein, we deny his

request and AFFIRM the decision of the Commissioner.

1

**I.   Applicable Law and Standard of Review**

In order to be eligible for SSI, a claimant must establish that he suffers from a disability.   The Act defines disability as the Ainability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.@   42 U.S.C. ' ' 423(d)(1)(A), 1382c(a)(3)(A).   The claimant=s impairment Amust result from anatomical, physiological, or psychological abnormalities@ which can be demonstrated using Amedically acceptable clinical and laboratory diagnostic techniques.@   20 C.F.R. ' 416.908.   The impairment Amust be established by medical evidence,@ not merely by the claimant=s statements about his symptoms.   *Id.*   Further, the claimant must show that his impairment is so severe that he is not only unable to do any of his previous work Abut cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.@ 42 U.S.C. ' 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration uses a Afive-step sequential evaluation process@ to determine disability.   20 C.F.R. ' ' 404.1520(a)(4), 416.924.   The five steps must be evaluated in sequence; if disability status can be determined at any step in the sequence, the application will not be reviewed further.   *Id.* ' 404.1520(a)(4).   At the first step, if the claimant is currently engaged in any substantial gainful activity, then he is not disabled.

At the second step, if the impairment is not severe, then he is not disabled.  A severe impairment Asignificantly limits [the claimant=s] physical or mental ability to do basic work activities.@  *Id.* '' 404.1520(c), 416.924(c).   At the third step, if the claimant=s impairments or combination of impairments meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. ' 404, Subpart P, Appendix 1, then the claimant is disabled.   The Listing of Impairments sets forth medical conditions that the Social Security Administration has deemed *per se* disabling.  *Id.* ' 404.1525(a). If the claimant=s impairments do not satisfy any listing,[1] then the claimant=s residual functional capacity (RFC) will be determined for use at the fourth and fifth steps of the evaluation process.   The RFC is an assessment of the claimant=s ability to work on a regular, continuing basis despite his impairment-related physical and mental limitations. *Id.* '' 404.1545, 416.945.   At the fourth step, if the claimant=s RFC permits his to perform his past relevant work, then he is not disabled.   *Id.* ' 404.1520(a)(4).   Lastly, at the fifth step, if the claimant is able to perform any other work in the relevant economy, then he is not disabled.   *Id.*   The fifth step requires consideration of the claimant=s RFC as well as his age, work experience, and education, which are not considered at step four.

For steps one through four of the evaluation process, the claimant bears the burden of proof.   The burden then shifts to the Commissioner at step five to show that there are

---

[1] For purposes of the Act, to satisfy a listing, a claimant Amust have a medically determinably impairment(s) that satisfies all the criteria in the listing.@  20 C.F.R. ' 405.1525(d). The Aimpairment(s) cannot meet the criteria of a listing based only on a diagnosis.@  *Id.*

jobs in the relevant economy that the claimant can perform. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). For a claimant with purely exertional limitations,[2] the Commissioner may use the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Agrids@) to make a disability determination. The grids correlate the claimant=s age, work experience, education, and RFC with a finding of Adisabled@ or Anot-disabled.@ 20 C.F.R. '' 404.1569, 404.1569a. If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used at this step. Instead, a vocational expert must testify regarding the number of existing jobs for a person with the claimant=s particular medical conditions and vocational characteristics. *Id.; Haynes v. Barnhart*, 416 F.3d 621, 629 (7th Cir. 2005); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Results from the grids, however, may serve as advisory guidelines in these cases. 20 C.F.R. ' 404.1569.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff=s entitlement to benefits, but to decide if the Commissioner=s decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Our standard of review in a case such as this is deferential; if the Commissioner=s decision is supported by substantial evidence in the record, the court must uphold his decision. 42 U.S.C. ' 405(g); *Skarbek v. Barnhart*, 390

---

[2] Exertional limitations are those which only affect a claimant=s ability to meet the strength demands of jobs. 20 C.F.R. ' 1569a(b).

F.3d 500, 503 (7th Cir. 2004).   The Supreme Court has defined Asubstantial evidence@ as Asuch relevant evidence as a reasonable mind might accept as adequate to support a conclusion.@  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   This standard requires Amore than a mere scintilla,@ but less than a preponderance, of the evidence.  *Id.* at 401; *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).   This limited scope of review derives from Congress=s intent that the Commissioner, not the courts, make disability determinations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

## II.  Claimant's Background and Medical Evidence

Mr. Vaden has a history of various pulmonary conditions which was first documented in December 2005, during a visit to the Wishard Hospital medical clinic. (Tr. 359).   His physician noted that he had a previous medical history of COPD (chronic obstructive pulmonary disease) and that a recent chest x-ray showed the same. He was encouraged to stop smoking and was prescribed Albuterol to improve his shortness of breath. Mr. Vaden was also prescribed a Beclomethasone inhaler, a steroid, to reduce pulmonary inflammation.

In the spring of 2006, it was noted that Mr. Vaden no longer smoked and his shortness of breath due to COPD had improved with inhalers.   During 2006, Mr. Vaden continued to use the steroid as well as inhaled Albuterol and Ipratropium to alleviate cough

symptoms and "coarse" breathing.   (Tr. 282).

Mr. Vaden was again treated at Wishard Hospital medical clinic in August 2007 and received a chest x-ray, which showed calcified granulomas in the right upper lobe.   (Tr. 369-370).

Mr. Vaden continued to use inhalers to decrease pulmonary inflammation through 2008 and he again sought treatment at Wishard Hospital where pulmonary function tests were ordered.   (Tr. 283-284).    At this time, he was found to have a new onset of diagnosed dyspnea, or shortness of breath.

On April 6, 2009, Mr. Vaden's chest CT scan revealed a lobulated mass in the right lung apex measuring 2.9 cm x 2.3 cm.  While this mass had been seen during  prior studies dating back to August 2007, it was difficult to determine whether it had changed significantly since the prior studies were plain film x-rays. Doctors concluded that the right upper lobe mass could be scar tissue, a portion of collapsed lung, infection, or a malignancy. (Tr. 309).   No precise diagnosis was made at this time.

One year later in April 2010, Dr. Mouser, M.D., the radiologist who interpreted the results of the CT scan, noted that the nodule had now increased in size to be 2.7 cm x 3.3 cm and that it appeared to him to be lung cancer.

In February 2011, Mr. Vaden was treated again at Wishard Hospital, where it was noted that the mass had increased in size and that Mr. Vaden had been coughing up blood for the previous 6 months.   (Tr. 393-394).

In June 2011, the pathology diagnosis showed a "poorly differentiated non-small cell carcinoma with extensive necrosis." One month later, his diagnoses were non-small cell lung cancer and chronic Hepatitis C; in addition, his cancer was at Stage III, with a life expectancy of fourteen to eighteen months. (Tr. 388).

Mr. Vaden was 62 years of age when he appeared before the ALJ for his hearing in April 2011.   He testified that he had worked until 2005 as a powder coater at Capital City Ironworks; this was a job he had held for fifteen years.   He performed this job while standing and wore a respirator that he felt was insufficiently performing its job of blocking paint particles and inhalants.   Mr. Vaden testified that he had completed the 8th grade in school, but that his reading and writing skills were limited.   He could not fill out an employment application or read a newspaper and his family had supported him since he stopped working in 2005.

**III. Discussion and Analysis**

This discussion briefly reviews the conclusions drawn by the ALJ, then turns to the the steps in the evaluative process that Mr. Vaden claims are flawed, and as a result, constitute legal error.   At step one, the ALJ concluded that Mr. Vaden was not engaged in substantial gainful activity since the date of onset of disability.   Mr. Vaden does not dispute this as he is not involved in work that requires significant mental or physical activity, nor is he employed gainfully in labor that is typically compensated.   At step two,

the ALJ recognized that Mr. Vaden suffered from bilateral arm pain and borderline intellectual functioning prior to August 1, 2010; however, he found none of Mr. Vaden's ailments reached the level of "severe" until he began showing evidence of lung cancer and its debilitating effects, which the ALJ found had begun on August 1, 2010.

Mr. Vaden maintains that the ALJ's decision is flawed in three respects: (1) the ALJ did not support his finding as to Mr. Vaden's disability onset date of August 1, 2010 with substantial evidence; (2) the ALJ should have called a medical expert to testify as to Mr. Vaden's disability onset date and medical equivalence; and (3) the ALJ made a flawed credibility determination.   Each of these contentions is considered in detail in the following discussion.

**A.   Was the ALJ's finding that Mr. Vaden became disabled on August 1, 2010 supported by substantial evidence?**   Mr. Vaden contends that substantial evidence fails to support the ALJ's determination of the date of onset of his disability because it is contrary to Social Security Ruling 83-20 and contrary to the evidence presented, requiring reversal of the ALJ's decision.   The Commissioner counters that there is substantial evidence cited in the ALJ's opinion to support the conclusions reached; further, the Claimant provides insufficient proof to show that the ALJ drew his conclusions in error.

Social Security Ruling 83-20 defines the disability onset date as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. Relevant

factors to this determination are the claimant's alleged onset date, his work history, and the medical evidence. *Id.*   In assessing the correctness of the onset date determined by the ALJ, "the issue is whether there is substantial evidence in the record to support the date chosen by [the ALJ], not whether an earlier date could have been supported." *Henderson*, 179 F.3d at 513 (quoting *Stein v. Sullivan*, 892 F.2d 43, 46 (7th Cir.1990)).   In the case of slowly progressive impairments, SSR 83-20 does not require an impairment to have reached the severity of an impairment listed in the regulations, as required under step three, but "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death." SSR 83-20. The onset date chosen by the ALJ can never be inconsistent with the medical evidence. *Id.*

The record clearly reflects that substantial evidence supports the ALJ's finding that Mr. Vaden became disabled on August 1, 2010, and that he did not have a severe impairment before that time. (Tr. 15-20).   The ALJ cited numerous examples from the record medical evidence showing that prior to August 2010, Mr. Vaden's impairments of bilateral arm pain, diabetes, osteoarthritis, hepatitis C, diabetes, hypertension, and an undiagnosed lung mass were either without serious complication or controlled with medication. (Tr. 281-86, 309, 327-407).   Although Mr. Vaden's lung mass was confirmed to be lung cancer in June 2011, the ALJ reasonably considered that in April 2009, doctors

found a right upper lobe mass in Mr. Vaden's right lung that was undiagnosed. (Tr. 19, 307). The ALJ considered that the doctors reported that this finding was similar to one made in April 2007, but the ALJ noted that the physician interpreting the April 2009 images was uncertain as to whether the mass had changed or was malignant. (Tr. 19, 307; Pl.'s Br. at 13). Moreover, the ALJ noted that two months later, in June 2009, Mr. Vaden had a normal pulmonary function test and that Mr. Vaden repeatedly had normal or mild results in June 2006 and March 2009 examinations performed by consulting physicians as well as a July 2009 examination performed by Mr. Vaden's primary care physician (Tr. 236-41, 303-06, 328). The record is replete with medical opinions of record, which consisted of a consulting physician's 2006 opinion that Mr. Vaden had no functional work limitations and two state agency reviewing physicians' June and July 2009 opinions that Mr. Vaden did not have a severe impairment (Tr. 17-18, 240, 321, 331).

In addition, he noted Mr. Vaden's own July 2009 statements that except for yard work, he could perform his activities of daily living without limitation. (Tr. 17, 185). In finding that Mr. Vaden became disabled as of August 1, 2010, the ALJ considered that CT scans of Mr. Vaden's chest taken in January 2011 and June 2011 showed an interval increase in the size of the right lung mass and were "concerning for malignancy" (Tr. 20, 344, 386). The ALJ also considered that treatment notes from February 2011 showed, among other things, that Mr. Vaden had complained of coughing up blood daily for the previous six months (Tr. 20, 346, 383-84). The ALJ noted that six months prior to

10

February 2011 was August 2010, the date that he determined to be Mr. Vaden's disability onset date.  (Tr. 20).  Thus, the ALJ appears to have taken great pains to trace the details of Mr. Vaden's medical history as well as in considering his daily activities.

A disability onset date of June 1, 2005 is plainly inconsistent with the medical evidence of record.  (Tr. 17-20). Mr. Vadens' alleged disability onset date was also inconsistent with his own testimony and subjective statements.  In addition to Mr. Vaden's statements as to his activities of daily living previously discussed, Mr. Vaden's own hearing testimony does not show that he was disabled as of his alleged disability onset date. For example, as noted by the ALJ, Mr. Vaden testified that from 2005 through December 2010, his dependency on drugs and alcohol and his bursitis and arthritis in his arms kept him from working. (Tr. 16, 48-50, 52-54). Moreover, in his application for benefits, Mr. Vaden made no mention of breathing difficulties or any possible COPD. (Tr. 140).  Considering the aforementioned, we conclude that the ALJ reasonably determined based upon substantial evidence in the record that Mr. Vaden became disabled on August 1, 2010.

**B.  Was the ALJ required to summon a medical expert?**  Relying on SSR 83-20, Mr. Vaden maintains that the ALJ's disability onset date determination was a medical finding that he should not have made without consulting a medical expert.  (Pl.'s Br. at 18). The evidence, however, shows no need for additional testimony by a medical

expert.   Under SSR 83-20, determining how long a disease may have existed at a disabling

level of severity "depends on an informed judgment of the facts" in the given case, and is a

judgment that must have a medical basis. *See* SSR 83-20. Social Security Ruling 83-20

acknowledges that an ALJ may have to infer the disability onset date and in such instance

should call on the services of a medical expert under such circumstances. *Id.*   The relevant

text of the ruling is:

> How long the disease may be determined to have existed at a
> disabling level of severity depends on an informed judgment of
> the facts in the particular case.   This judgment, however, must
> have a legitimate medical basis. At the hearing, the
> administrative law judge (ALJ) should call on the services of a
> medical advisor when onset must be inferred. If there is
> information in the file indicating that additional medical
> evidence concerning onset is available, such evidence should
> be secured before inferences are made. SSR 83-20.

Similarly, the Seventh Circuit has held that with slowly progressing impairments,

an onset date must often be inferred, especially when adequate medical records are

unavailable. *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999).

"Although an ALJ generally should consult a medical advisor to make this inference, such

consultation is unnecessary when the claimant's medical chronology is complete." *Id.*

(affirming ALJ's onset date inference).

Mr. Vaden reads SSR 83-20 as requiring the use of a medical expert whenever a

claimant's disability onset date is at issue. However, SSR 83-20 contains no such

requirement. *See Eichstadt v. Astrue*, 534 F.3d 663, 666-67 (7th Cir. 2008). Rather, "it

describes something that the ALJ 'should' do, rather than something he or she 'must' do or 'shall' do, implying that the ultimate decision is up to the ALJ." *Id.*   Here, Mr. Vaden's medical record was fully-developed and carefully reviewed by the ALJ (Tr. 15-20).   The ALJ reasonably determined that Mr. Vaden did not have any severe impairment prior to August 1, 2010, and cited substantial record evidence in support of this finding (Tr. 15-20).

Notably, as discussed above, Mr. Vaden's own testimony also supports the ALJ's determination of his disability onset date. (Tr. 15-20, 41-54, 140). In addition, the regulations provide that the decision to use a medical expert is discretionary, and the evidence shows that the ALJ was well within his discretion in not calling on a medical expert, given the substantial evidence in this case that Mr. Vaden's impairments were not severe or disabling prior to August 1, 2010. 20 C.F.Tr. § 404.1527(f)(2)(ii); *see also Henderson*, 179 F.3d at 513. (Affirming the decision of an ALJ where there was no expert consulted and the medical record was well developed.)

Moreover, as the ALJ noted, Drs. Bond and Corcoran opined that Mr. Vaden's physical impairments were not severe (Tr. 321, 331).   These physicians' opinions constitute substantial evidence supporting the ALJ's Step Three finding. *See Scheck*, 357 F.3d at 700; *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990).   In *Scheck*, the state agency physicians opined that the claimant's impairments did not meet or medically equal a listing. 357 F.3d at 700. The Seventh Circuit found that, where the ALJ did not reject evidence which would have supported the claimant's contrary position, the ALJ was not

13

required to provide reasons for accepting the state agency physicians' opinions. *Id.* at 700-01. As in *Scheck*, state agency physicians concluded that Mr. Vaden's impairments did not meet or medically equal a listing (Tr. 58-61, 321, 331), and no physician of record provided a contrary opinion. Thus, contrary to Mr. Vaden's contentions, the ALJ not only supported his finding that Mr. Vaden's impairments did not meet or medically equal a listing with the substantial evidence cited above, it was not necessary for him to articulate specific reasons for accepting the physicians' and psychologists' uncontradicted opinions (Tr. 19). *See Scheck*, 357 F.3d at 700-01. Moreover, when a claimant contends that he has an impairment that meets or equals a listed impairment, the burden is on him to show how the impairment meets or equals *all* of the requirements of that listing. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Mr. Vaden makes no attempt to show that his impairments medically equaled any listing, as was his burden to do (Pl.'s Br. at 12-19).

Mr. Vaden's citation to *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2006) and *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000), contains no analysis and is inapposite (Pl.'s Br. at 18-19).  In *Barnett*, the court found that the ALJ simply assumed the absence of medical equivalence without any relevant discussion of the evidence. 381 F.3d at 670-71. In addition, the court in *Barnett* could not locate an agency form, such as a Disability Determination and Transmittal form, that would have satisfied the ALJ's duty to consider an expert's opinion on medical equivalence. *Id.* That was not the case here. In

14

*Green*, the ALJ reached his RFC finding solely by determining that the claimant's subjective complaints were disproportionate to the objective medical record, without consulting any apparent medical opinion. 204 F.3d at 781.   Again, that was not the case here.

Having failed to establish that the ALJ's evaluation was incomplete respecting Mr. Vaden=s medical problems, the numerous unsubstantiated objections advanced here regarding the use of medical experts are not well taken.   Mr. Vaden has not established that the ALJ's conclusions lacked a sufficient evidentiary basis in the administrative record.   Therefore, the ALJ's finding stands as made, supported as it is by substantial evidence and uncontradicted by the opinions of medical experts.

**C.   Was there substantial evidence to support the ALJ's credibility finding?**

Finally, Mr. Vaden argues that the ALJ substituted his lay opinion "of the claimant's degree of dysfunction for that assessed by his treating physician, contrary to the treating physician rule. . . ." (Pl.'s Br. at 20). The record, properly considered, indicates otherwise.

The ALJ discussed the varying symptoms that Mr. Vaden's medically determinable impairments could have been reasonably expected to produce. In so doing, the ALJ considered Mr. Vaden's subjective statements at his hearing and in his applications for benefits; the normal to mild objective medical evidence before August 2010; examinations showing no functional deficits; the opinions of the record medical sources, none of whom opined as to any functional limitations, much less any disabling limitations, before August

2010; and Mr. Vaden's activities of daily living prior to August 2010, including his July 2009 statement that he performed all but yard work without any limitations. (Tr. 16-20). Mr. Vaden's claims strain credulity by asserting that the ALJ "failed to make any accurate findings" concerning the factors set forth in the regulations and SSR 96-7p "because the ALJ ignored or rejected all of the evidence which corroborated the claimant's allegations that he was not able to work due to shortness of breath." (Pl.'s Br. at 20).

Mr. Vaden's arguments are at best perfunctory, ignoring the numerous factors considered by the ALJ and weighing Mr. Vaden's own reported symptoms in light of and compared to his medical record.   (Tr. 15-20). *See* 20 C.F.Tr. § 404.1529 and SSR 96-7p. For these reasons, the ALJ's credibility finding satisfied the requirements of 20 C.F.Tr. § 404.1529 and SSR 96-7p. Substantial evidence supports this finding, and Mr. Vaden's largely unsupported boilerplate arguments to the contrary are thus rejected.

## IV.  Conclusion

In summary, the ALJ's consideration of all the matters raised by Mr. Vaden in this appeal are unavailing and the ALJ's decision with regard to any entitlement to DBI and SSI benefits under the Act was supported by substantial evidence.   No legal error is found.

The Commissioner=s decision is without legal error and is therefore AFFIRMED.

IT IS SO ORDERED.

Date:   ___03/29/2013_____

_Sarah Evans Barker_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

16

<u>Copies to</u>:

Joseph W. Shull
Attorney
<u>jshull@joeshull.com</u>

Thomas E. Kieper
United States Attorney's Office
<u>tom.kieper@usdoj.gov</u>